IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| RITA M. CLARK, | ) | CASE NO. 1:11CV995 |
| | ) | |
| Plaintiff, | ) | JUDGE JAMES S. GWIN |
| | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | KATHLEEN B. BURKE |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | **REPORT AND RECOMMENDATION** |
| Defendant. | ) | |

Plaintiff Rita M. Clark ("Clark") seeks judicial review of the final decision of Defendant Commissioner of Social Security ("Commissioner") denying her application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act (the "Act"), 42 U.S.C. §§ 416(i) and 423.  This matter has been referred to the undersigned Magistrate Judge for a Report and Recommendation pursuant to Local Rule 72.2(b)(1).

In this case, the Administrative Law Judge (the "ALJ"), whose decision became the final decision of the Commissioner, determined that Clark was not disabled because she did not have an impairment that was "severe," i.e., one that limited her ability to perform basic work-related activities.  In other words, the ALJ decided this case at Step Two of the five-step sequential evaluation process established by agency regulations.  Because, as set forth below, substantial evidence in the record supports the ALJ's determination, the final decision of the Commissioner should be **AFFIRMED**.

### I.  Procedural History

On August 13, 2008, Clark filed an application for DIB, alleging a disability onset date of April 17, 1998.  Tr. 81-82.  Clark's date last insured was December 31, 2003.  Tr. 99.  Clark claimed that she was disabled due to a combination of impairments, including chronic

1

obstructive pulmonary disease ("COPD"), arthritis, spine problems, neuropathy, thyroid disease, and depression.  Tr. 68, 110.  The state agency denied Clark's claim initially and upon reconsideration, and Clark timely requested a hearing before an administrative law judge.  Tr. 68-70, 73-74, 79-80.  On January 25, 2010, the ALJ, James J. Quigley, held a hearing.  Tr. 47-62.  On March 18, 2010, the ALJ issued a decision finding that Clark was not disabled or entitled to DIB.  Tr. 11-18.  Clark requested review of the ALJ's decision by the Appeals Council on March 31, 2010.  Tr. 5-7.  On March 25, 2011, the Appeals Council denied review, making the ALJ's decision the final decision of the Commissioner.  Tr. 1-4.

## II.  Evidence

### A.    Background

Clark was born on January 19, 1948, and was 50 years old on April 17, 1998, her alleged onset date, and 55 years old on December 31, 2003, her date last insured.  Tr. 50, 81.  She testified that she attained her high school equivalency diploma.  Tr. 50.  At the time of the administrative hearing, she lived with her husband.  Tr. 51.  She previously worked as a home health care provide.  Tr. 118.

### B.    Medical Evidence

#### 1.    Hearing Loss

In 1995, three years prior to her alleged onset date, Clark presented to the Cleveland Clinic with complaints of fluctuating hearing loss.  Tr. 16, 180.  Clark was diagnosed with Meniere 's Disease, a disorder characterized by fluctuating hearing loss, roaring tinnitus, and episodic vertigo.  Tr. 180.  She underwent surgery on February 14, 1995, which involved the implantation of an endolymphatic mastoid shunt on the left side.  Tr. 180.  Two months later, on April 10, 1995, an auditory test was performed which revealed a hearing threshold on the left of

2

80 decibels at 500, 1000 and 2000 Hz.  Tr. 178.  The evaluator was unable to perform a speech recognition test on the left because of Clark's hearing loss.

 2.  **Back Pain/Pain and Numbness in Extremities**

After her alleged onset date, in 2000, Clark complained of pain and numbness in her extremities.  Tr. 16, 170.  Her family physician referred her to Glen Stevens, D.O., a neurologist at the Cleveland Clinic Foundation, to investigate these symptoms.  Tr. 172-177.  On examination, Dr. Stevens found decreased sensation to pinprick bilaterally on the dorsum of the feet, decreased temperature on the left dorsum, bilateral paraspinal tenderness at the mid-thoracic level, bilateral clavicular pain on palpation, and a positive Hoffman's sign (which reflected increased irritability of the sensory nerves).  Tr. 172, 175.  Dr. Stevens ordered various tests.  An x-ray showed eccentric disc protrusion at C5-6 with very mild impingement.  Tr. 170.  Dr. Stevens also ordered an MRI of Clark's brain and an MRI of her cervical spine, which were performed on October 13, 2000.  Tr. 166-69.  The MRI of Clark's brain noted normal findings. Tr. 170.  There was no clear evidence of demyelinating disease, intracranial mass or other structural abnormality.  Tr. 170.  The cervical MRI revealed moderate narrowing of the C5-6 interspace, as well as a broad-based disc protrusion at C5-6 that was eccentric to the left midline and that mildly flattened the ventral surface of the cord but did not significantly compress it.  Tr. 166, 170.

Meanwhile, on September 18, 2000, Clark presented to her family physician, Frank G. Sailors, D.O., complaining of pain in her posterior thoracic region.  Tr. 272.  Dr. Sailors prescribed Vicodin ES for the pain.  Tr. 272.  On July 24, 2001, Clark saw Dr. Sailors and complained of lower lumbar pain that radiated into both lower extremities, as well as neuropathy in the bilateral lower extremities.  Tr. 279.  Dr. Sailors started Clark on Elavil.  Tr. 279.  On

August 21, 2001, Clark reported to Dr. Sailors and complained of the same symptoms.  Tr. 278.

Dr. Sailors increased Clark's prescription for Elavil.  Tr. 278.  On November 20, 2001, Clark

saw Dr. Sailors and complained that she was feeling that her left foot was going to drop.  Tr.

277.  Dr. Sailors diagnosed lumbar radiculopathy and chronic low back pain.  Tr. 277.  On

October 26, 2002, an MRI of the thoracic spine revealed disc dehydration with loss of disc height

at essentially all the thoracic levels.  Tr. 268.

### 3.    Respiratory Problems

During the relevant period, Clark also suffered from respiratory problems.  On January

27, 2000, she was treated at the Ashtabula Medical Center for shortness of breath.  Tr. 284, 334-

35.  She was prescribed medications and a home aerosol machine, and her symptoms were well

controlled with medicine.  Tr. 288.  Chest x-rays repeatedly were normal with no infiltrates and

no significant abnormalities of the lungs.  Tr. 15, 260, 269, 274, 336, 355.  In addition, Dr.

Sailors treated Clark on several occasions for bronchitis and COPD, without acute cardiac or

pulmonary disease.  Tr. 257, 271, 276-77.  A pulmonary function study was performed at Lake

Hospital on October 16, 2002, and revealed moderately reduced mid flow rates and diagnosed

small airways disease.  Tr. 381.

### 4.    Hypothyroidism

Clark was diagnosed with hypothyroidism (Tr. 213), but it is unclear from the medical

records when she was first diagnosed with this condition.  Clark testified that she was diagnosed

with this condition in 2003.  Tr. 53.  Clark also stated that she was not sure if this condition was

connected to any of her pain.  Tr. 53.  Clark took Levoxyl to control this condition, but

discontinued her medication without consulting her physician.  Tr. 223, 272.

4

### 5.  Depression

Additionally, during the pertinent time, Clark was diagnosed with depression by her family physician, Dr. Sailors.  Tr. 238, 266, 271.  Dr. Sailors prescribed Prozac to treat this condition.  Tr. 238, 266, 271.  Clark never saw a psychologist or psychiatrist for treatment of her depression.  Tr. 16, 126.

## C.  Testimonial Evidence

### 1.  Clark's Testimony

On January 25, 2010, Clark appeared with counsel and testified at the administrative hearing.  Tr. 49-61.  Clark testified that she had worked in home health care in 2000 and stated that her job duties included cooking, bathing, activities, and housekeeping.  Tr. 51.  She explained that she stopped working in home health care because she had trouble wearing clothes and shoes.  Tr. 51.  She stated that her neuropathy caused these problems.  Tr. 51.  Clark also testified that she had Meniere's disease, fibromyalgia, arthritis in her spine, chest, hands, wrists, and thumbs, and nerve pain.  Tr. 52, 55.   She stated that she had not tried to find any other work over the last eight or nine years because she had not improved sufficiently to wear clothes all day long or drive to work.  Tr. 52.

Clark described the pain in her feet as sometimes a burning sensation and sometimes like thousands and thousands of needles were stuck in her feet.  Tr. 54.   She also stated that she has excruciating back pain sometimes.  Tr. 56.   Clark testified that she cried all the time because of her pain.  Tr. 57.  She stated that she had also been diagnosed with depression.  Tr. 59.  Clark explained that she took Prozac for depression and that medication kept her "pretty leveled out." Tr. 59.  She reported that she had never seen a psychologist or psychiatrist for her depression. Tr. 16, 126.

### 2.        Vocational Expert's Testimony

Paula Day, a vocational expert (the "VE"), was present at the administrative hearing.  Tr. 61-62.  The VE testified that Clark had previously worked as home help, which was a semi-skilled position performed at a medium exertional level.  Tr. 61.  The VE also stated that Clark's job skills were job specific.  Tr. 61.  No other questions were asked of the VE.

### III.  Standard for Disability

Under the Act, 42 U.S.C § 423(a), eligibility for benefit payments depends on the existence of a disability.  "Disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  Furthermore:

> [A]n individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . .

42 U.S.C. § 423(d)(2).  In making a determination as to disability under this definition, an ALJ is required to follow a five-step sequential analysis set out in agency regulations.  The five steps can be summarized as follows:

1.  If the claimant is doing substantial gainful activity, he is not disabled.

2.  If claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled.

3.  If claimant is not doing substantial gainful activity, is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.

4.  If the impairment does not meet or equal a listed impairment, the ALJ must assess the claimant's residual functional capacity and use it to determine if claimant's impairment prevents him from doing past relevant work.  If claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.

5.  If claimant is unable to perform past relevant work, he is not disabled if, based on his vocational factors and residual functional capacity, he is capable of performing other work that exists in significant numbers in the national economy.

20 C.F.R. §§ 404.1520, 416.920 (b)-(g); *see also Bowen v. Yuckert*, 482 U.S. 137, 140-42, 96 L. Ed. 2d 119, 107 S. Ct. 2287 (1987).  Under this analysis, the claimant has the burden of proof at Steps One through Four.  *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997). The burden shifts to the Commissioner at Step Five to establish whether the claimant has the residual functional capacity ("RFC") and vocational factors to perform work available in the national economy.  *Id.*

## IV.  The ALJ's Decision

In his March 2010 decision, the ALJ determined under Step One of the sequential analysis that Clark had not engaged in substantial gainful activity from her alleged onset date of April 17, 1998, through her date lasted insured of December 31, 2003.  Tr. 13.  Under Step Two, the ALJ found that Clark had the following medically determinable impairments: intermittent respiratory problems, degenerative disc disease of the cervical spine, disc desiccation of the thoracic spine, hearing loss, Meniere's Disease, hypothyroidism, and depression.  Tr. 13.  Also at Step Two, the ALJ considered Clark's allegations of neuropathy, fibromyalgia, and arthritis but found that these conditions were not medically determinable impairments.  Tr. 14.  Finally, in concluding his Step Two analysis, the ALJ determined that, through her date last insured, Clark did not have a severe impairment or combination of impairments that significantly limited her ability to perform basic work-related activities for 12 consecutive months.  Tr. 14.  Based on this

determination, the ALJ concluded that Clark was not disabled at any time from her alleged onset date to her last date insured.  Tr. 18.

### V.  Arguments of the Parties

Clark's sole argument is that the ALJ erred under Step Two of the sequential analysis by not finding that she suffered from any severe impairment during the relevant period (April 17, 1998, the alleged onset date, to December 31, 2003, the date last insured).  Doc. 14.  In response, the Commissioner asserts that substantial evidence supports the ALJ's finding at Step Two that Clark's conditions and combination of conditions were not severe impairments during the relevant time period.  Doc. 18.

### VI.  Law & Analysis

#### A.      Standard of Review

A reviewing court must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the record.  42 U.S.C. § 405(g); *Wright v. Massanari*, 321 F.3d 611, 614 (6th Cir. 2003).  "Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Besaw v. Sec'y of Health & Human Servs.*, 966 F.2d 1028, 1030 (6th Cir. 1992).  The Commissioner's findings "as to any fact if supported by substantial evidence shall be conclusive."  *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006) (citing 42 U.S.C. § 405(g)).  Even if substantial evidence or,  indeed, a preponderance of the evidence supports a claimant's position, a reviewing court cannot overturn "so long as substantial evidence also supports the conclusion reached by the ALJ."  *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003).  Accordingly, a court "may not try the case *de novo*, nor

resolve conflicts in evidence, nor decide questions of credibility." *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

**B.**     **Substantial Evidence Supports the ALJ's Step Two Finding that Clark had No Severe Impairments During the Relevant Time**

Clark argues that the ALJ erroneously evaluated the severity of her impairments during the relevant period. Contrary to this argument, substantial evidence supports the ALJ's determination at Step Two that Clark had no severe impairments during the relevant time.

At Step Two, a claimant must show that she suffers from a severe medically determinable physical or mental impairment. 20 C.F.R. § 404.1520(a)(4)(ii). An impairment is not considered severe when it does not significantly limit the claimant's physical or mental ability to do basic work activities (without considering the claimant's age, education, or work experience). *Long v. Apfel*, 1 Fed. App'x. 326, 331-332 (6th Cir. 2001); 20 C.F.R § 404.1521(c). Basic work activities are defined by the regulations as "'abilities and aptitudes necessary to do most jobs,' and include: (1) physical functions; (2) the capacity to see, hear and speak; (3) '[u]nderstanding, carrying out, and remembering simple instructions;' (4) '[u]se of judgment;' (5) '[r]esponding appropriately to supervision, co-workers, and usual work situations;' and (6) '[d]ealing with change in a routine work setting.'" *Simpson v. Comm'r Soc. Sec.*, 344 Fed. App'x. 181, 190 (6th Cir. 2009) (quoting 20 C.F.R. §§ 404.1521(a)-(b) and 416.921(a)-(b)).

In *Higgs v. Bowen*, the Sixth Circuit found that "an impairment can be considered not severe only if it is a slight abnormality that minimally affects work ability regardless of age, education, and experience." *Higgs v. Bowen*, 880 F.2d 860, 862 (6th Cir. 1988). The *Higgs* court observed that "this lenient interpretation of the severity requirement in part represents the courts' response to the Secretary's questionable practice in the early 1980s of using the step two regulation to deny meritorious claims without proper vocational analysis." *Id.* But the court also

9

recognized that "Congress has approved the threshold dismissal of claims obviously lacking medical merit . . . ." *Id.*  That is, "the severity requirement may still be employed as an administrative convenience to screen out claims that are 'totally groundless' solely from a medical standpoint." *Id.* at 863.  Indeed, the *Higgs* court approved of that practice; it affirmed dismissal because the record contained no objective medical evidence to support Ms. Higgs's claims of severe impairment.  Particularly relevant to the case at bar, the *Higgs* court observed that "[t]he mere diagnosis of [an ailment], of course, says nothing about the severity of the condition." *Id.*

Since *Higgs,* the Sixth Circuit has regularly found substantial evidence to support a finding of no severe impairment if the medical evidence contains no information regarding physical limitations or the intensity, frequency, and duration of pain associated with a condition, *See, e.g.*, *Long*, 1 Fed. App'x. at 332; *Compare Maloney v. Apfel,* 211 F.3d 1269 (table), No. 99-3081, 2000 WL 420700 at *2, (6th Cir. 2000) (per curiam) (finding substantial evidence to support denial when record indicated claimant showed symptoms and was diagnosed with disorder but did not contain evidence of a disabling impairment that would prevent work); *and Foster v. Secretary of Health & Human Svcs.,* 899 F.2d 1221 (table), No. 88-1644, 1990 WL 41835 at *2 (6th Cir. 1990) (per curiam) (finding substantial evidence to support denial when the claimant produced no evidence regarding the frequency, intensity, and duration of arthritic pain; the record indicated that he was no more than slightly or minimally impaired); *with Burton v. Apfel,* 208 F.3d 212 (table), No. 98-4198. 2000 WL 125853 at *3 (6th Cir. 2000) (reversing finding of no severe impairment because record contained diagnoses and remarks from a number of treating physicians and psychologists to the effect that claimant was " 'unable to work ... due to the complexity of her health problems'" (quoting physician)); *and Childrey v. Chater,* 91 F.3d

143 (table), No. 95-1353, 1996 WL 420265 at *2 (6th Cir. 1996) (per curiam) (reversing finding of no severe impairment because record contained an assessment by a consulting physician reflecting a variety of mental problems that left her "'not yet able to really care for herself alone,'" reports of two other physicians corroborating this, consistent testimony from the claimant, and no medical evidence to the contrary (quoting physician)).

The record in this case does not contain a single statement by a treating physician indicating that Clark's health problems result in any specific work-impairing limitations.  On the contrary, the medical evidence shows that most of Clark's symptoms were controlled with prescription medication.  A review of the medical evidence with regard to each of the medically determinable impairments found by the ALJ confirms that the ALJ's decision under Step Two is supported by substantial evidence.

### 1.     Clark's Back Pain/Pain in Her Extremities were Not Severe Impairments

The ALJ reasonably found that Clark's back pain, as well as the pain and numbness in her extremities, were not severe impairments.  Tr. 16, 170.  The medical evidence supports the ALJ's Step Two finding that these conditions were not severe impairments.  In 2000, Clark presented to the Cleveland Clinic complaining of pain and numbness in her extremities.  Tr. 16, 170.  An x-ray showed eccentric disc protrusion at C5-6 with very mild impingement.  Tr. 170. Additional tests revealed a small amount of fluid in the left mastoid air cells; however, Clark's brain MRI was otherwise, normal.  Tr. 16, 170-71.  There was also no clear evidence of demyelinating disease, intracranial mass, or other structural abnormality.  Tr. 16, 170.  In addition, the ALJ appropriately noted that, prior to her date last insured, Clark's treatment was sparse and very conservative in nature.  Tr. 16.  Further, no treating physician ever opined that Clark's back condition or the pain in her extremities imposed any limitations on her ability to

11

work.  Put simply, there is no medical evidence that these impairments were severe. Thus, the

ALJ's determination that Clark's back pain and the pain/numbness in her extremities were not

severe impairments is supported by substantial evidence.

Clark argues that her subjective complaints of pain evidence that her impairments were

more than slight abnormalities.  Doc. 14, pp. 9-10.  Clark also contends that the ALJ improperly

discounter her subjective complaints of pain.  Contrary to this argument, the ALJ properly

considered Clark's complaints of pain in determining whether her impairments were severe.

A disability claim can be supported by a claimant's subjective complaints as long as there

is objective medical evidence of the underlying medical condition in the record.  *Jones v.*

*Comm'r of Soc. Sec.*, 336 F.3d at 475.  "[I]f disabling severity cannot be shown by objective

medical evidence alone, the Commissioner will also consider other factors, such as daily

activities and the type and dosage of medication taken."  *Id.* (citing 20 C.F.R. § 404.1529(c)(3)).

To evaluate the credibility of a claimant's subjective reports of pain, a two-part analysis is used.

20 C.F.R. § 416.929(a); *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007).  First,

the ALJ must determine whether the claimant has an underlying medically determinable

impairment which could reasonably be expected to produce the claimant's symptoms.  *Rogers,*

*486 F.3d at 247.*  Second, if such an impairment exists, then the ALJ must evaluate the intensity,

persistence and limiting effects of the symptoms on the claimant's ability to work.  *Id.*  The ALJ

should consider the following factors in evaluating a claimant's symptoms:

1) the individual's daily activities;
2) the location, duration, frequency, and intensity of the individual's pain or other symptoms;
3) factors that precipitate and aggravate the symptoms;
4) the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms;
5) treatment other than medication that the individual receives or has received for relief of pain or other symptoms;

6) any measures other than treatment the individual uses or has used to relieve pain or other symptoms, e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board; and

7) any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms.

*Id.; see also* 20 C.F.R. §§ 404.1529(c) and 416.929(c); Social Security Rule ("SSR") 96-7p, 1996 WL 374186, *3.

However, "an ALJ is not required to accept a claimant's subjective complaints and may properly consider the credibility of a claimant when making a determination of disability." *Jones,* 336 F.3d at 476 (citations omitted).  An ALJ's credibility assessment must be supported by substantial evidence but "an ALJ's findings based on the credibility of the applicant are to be accorded great weight and deference, particularly since an ALJ is charged with the duty of observing a witness's demeanor and credibility." *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997).  It is the province of the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant.  *Rogers*, 486 F.3d at 247.  If the ALJ rejects a claimant's testimony as not being credible, the ALJ must state his reasons so as to make obvious to the individual and to any subsequent reviewers the weight given to the individual's statements and the reason for that weight.  *See Cross v. Comm'r of Soc. Sec.*, 373 F. Supp. 2d 724, 733 (N.D. Ohio 2005); Social Security Rule ("SSR") 96-7p, 1996 WL 374186, *2.

In this case, the ALJ undertook the appropriate analysis for considering a claimant's credibility and determined that Clark's statements about her limitations lacked credibility.  Tr. 14-15.  In reaching this determination, the ALJ stated that the medical evidence does not support her subjective complaints of pain or establish the presence of functionally limiting physical or mental impairments.  Tr. 15.  The ALJ also found that Clark's complaints of disabling pain were inconsistent with her behavior of smoking cigarettes and being non-compliant in taking

13

prescription medication.  Tr. 18.  Finally, the ALJ noted that Clark's symptoms were adequately controlled with medication.  Tr. 18.  *See* SSR 96-7p, 1996 WL 374186, at *3 (credibility analysis should include consideration of, among other things, the objective medical record, the claimant's daily activities, the effectiveness of medication, and treatment received).  The ALJ applied the proper factors in making his credibility determination and reasonably concluded that Clark's allegations concerning her pain were not entirely credible.  The ALJ's reasons for making such a finding are supported by substantial evidence, especially considering the absence of any objective medical evidence in this case corroborating Clark's allegations that her impairments caused limitations on her ability to work.  *See* 20 C.F.R. § 404.1529(a) (a claimant's statements about his or her pain or symptoms will not alone establish that he or she is disabled).

### 2.      Clark's Hearing Loss was Not a Severe Impairment

The ALJ also reasonably determined that Clark's hearing loss was not a severe impairment during the relevant time frame.  In 1995, three years prior to her alleged onset date, Clark went to the Cleveland Clinic with complaints of fluctuating hearing loss.  Tr. 16, 180. After being diagnosed with Meniere's Disease, she underwent surgery.  Tr. 16, 180.  Notably, as the ALJ pointed out, after this surgery and prior to Clark's date last insured, there is no evidence in the record of significant functional limitations related to Clark's hearing issues.  Tr. 16. Indeed, there is no opinion by a treating physician or any other medical evidence that Clark's hearing loss resulted in any specific work-impairing limitations.  The ALJ also correctly noted that the evidence failed to demonstrate that it was medically necessary for Clark to use a hearing device.  Tr. 16.

Clark asserts that the ALJ chose to "dismiss this impairment without further consideration."  Doc. 14, p. 11.  On the contrary, the ALJ expressly addressed Clark's hearing

14

issues in his decision (Tr. 16) despite the fact that the evidence relating to that condition was not time relevant, i.e., it related to a period before the alleged onset date.  Tr. 16.  Additionally, Clark argues that the ALJ erred because he did not discuss "any limitations on work ability the hearing loss might impose."  Doc. 14, p. 11.  However, Clark has the burden of showing that her hearing loss imposed limitations on her ability to work.  *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987) (claimant retains burden of proof through step four).  Clark has failed to meet her burden of establishing that her hearing loss was a severe impairment and the ALJ's determination is thus supported by substantial evidence.

### 3.    Clark's Respiratory Problems were Not Severe Impairments

Substantial evidence also supports the ALJ's finding that Clark's respiratory problems and her COPD were not severe impairments.  While it is true that, during the relevant period, Clark was treated for shortness of breath and COPD (without acute cardiac or pulmonary disease), there was no medical evidence that these impairments in any way interfered with her ability to work.  As noted by the ALJ, during a hospital stay for bronchitis, Clark tolerated activity without distress, turned and positioned herself without difficulty, and maintained a steady gait. Tr. 16, 285.  In addition, as the ALJ noted, chest x-rays consistently were normal and showed no infiltrates and no significant abnormalities of the lungs.  Tr. 15, 260, 269, 274, 336, 355.  Further, Clark's symptoms were controlled with medicine.  Tr. 15.  Clark has again failed to satisfy her burden of showing that her respiratory problems and COPD had more than a minimal effect on her ability to conduct basic work activities during the relevant time frame.

### 4.    Clark's Hypothyroidism was Not a Severe Impairment

The ALJ's determination that Clark's hypothyroidism was not a severe impairment is supported by substantial evidence.  As noted by the ALJ, although Clark was diagnosed with this

condition, she testified that she was unsure if the disorder was connected to any pain she suffered.  Tr. 53; *see Foster v. Bowen*, 853 F.2d 483, 489 (6th Cir. 1988) (the mere diagnosis of an impairment says nothing about the extent of limitation that an impairment imposes).  In addition, the medical evidence establishes that this condition was controlled with medication.  Further, as correctly noted by the ALJ, Clark's treatment records do not document any significant functional limitations related to this condition.  Thus, Clark has also failed to satisfy her burden of establishing that her hypothyroidism was a severe impairment.

### 5.    Clark's Depression was Not a Severe Impairment

Finally, substantial evidence supports the ALJ's conclusion that Clark's depression was not a severe impairment.  As noted by the ALJ, Clark testified that she had never seen a psychologist or psychiatrist for her depression.  Tr. 16, 126.  In addition, even though Dr. Sailors diagnosed Clark with depression, he never gave any opinion as to whether Clark's depression caused any functional limitations on her ability to work.  Clark also testified that her medication kept her "pretty leveled out."  Tr. 59.  Thus, as with her other conditions, Clark has failed to demonstrate that her depression caused any limitations on her ability to work.

In sum, there are no opinions from any of Clark's treating physicians or any other objective medical evidence that her hearing impairment, pain-related conditions, respiratory issues, hypothyroidism or depression caused any specific work-impairing limitations.  Accordingly, substantial evidence supports the ALJ's determination at Step Two that Clark did not have any severe impairments during the relevant period.

### C.    The ALJ Properly Considered the Combined Effect of Clark's Impairments

Clark contends that the ALJ failed to consider her impairments in combination as required by 20 C.F.R. § 404.1523.  That regulation provides that the ALJ "will consider the

16

combined effect of all of [a claimant's] impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity." *Id.*  Here, the ALJ explicitly stated that Clark "does not have an impairment or combination of impairments that significantly limited her ability to perform basic work related activities for 12 consecutive months; therefore, the claimant did not have a severe impairment or combination of impairments." (Tr. 14); *see Loy v. Sec'y of Health & Human Servs.,* 901 F.2d 1306, 1310 (6th Cir. 1990) ("An ALJ's individual discussion of multiple impairments does not imply that he failed to consider the effect of the impairments in combination, where the ALJ specifically refers to a 'combination of impairments' in finding that the plaintiff does not meet the listings." (internal quotation omitted)). The ALJ discussed Clark's specific medical problems and referred multiple times throughout that discussion to the combination of impairments.  Tr. 14, 17 ("Evidence also confirmed that her impairments both singly and combined did not significantly limit her ability to perform basic work activities"); Tr. 18 ("the claimant's physical and mental impairments, considered singly and in combination do not limit the claimant's ability to perform basic work activities.").  The structure of the ALJ's opinion and numerous references to the combination of impairments indicates the ALJ did consider the combined effect of all of Clark's impairments. Clark is therefore not entitled to remand on this argument.

### VII.  Conclusion and Recommendation

For the foregoing reasons, the final decision of the Commissioner denying Plaintiff Rita M. Clark's application for Disability Insurance Benefits should be AFFIRMED.

Dated: June 5, 2012

Kathleen B. Burke
United States Magistrate Judge

17

## **OBJECTIONS**

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after the party objecting has been served with a copy of this Report and Recommendation.  Failure to file objections within the specified time may waive the right to appeal the District Court's order.  *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); s*ee also Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).

18